Madhavan PISHARODI, M.D., Appellant,

v.

J. Martin BARRASH, M.D. and Houston Neurosurgical Associates, P.A., Appellees.

No. 13–02–471–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 29, 2003.

Rehearing Overruled Oct. 30, 2003.

Horacio L. Barrera, Martinez & Barrerra, J., for appellant.

Linda C. Breck, Thomas F. Nye, Brin & Brin, Corpus Christi, for appellees.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## OPINION

Opinion by Justice GARZA.

Appellant challenges a trial court's award of summary judgment in favor of appellees on a claim of libel asserted against them by appellant. In this appeal, we decide whether the allegedly libelous statements are protected speech and if not, whether they are privileged communications. We answer both issues in the negative and reverse the trial court's judgment in favor of appellees.

## Factual Background

This action stems from medical treatment given to Juan Escobedo ("Escobedo") by appellant, Madhaven Pisharodi, M.D. ("Dr. Pisharodi"), a doctor specializing in neurosurgery. Escobedo was injured in a work-related accident, and Dr. Pisharodi recommended extensive surgery to correct his condition. Escobedo's insurance carrier disputed the necessity of the recommended treatment and requested opinions from three additional physicians. Two of these physicians, one of whom was appellee J. Martin Barrash, M.D. ("Dr. Barrash"), recommended a more limited procedure than the one suggested by Dr. Pisharodi. Escobedo's insurer ultimately refused the surgery recommended by Dr. Pisharodi, but it consented to an alternative surgery.

After getting this consent from the insurer, Dr. Pisharodi performed surgery on Escobedo. He then recommended that Escobedo undergo additional surgery and medical treatment. Escobedo's insurance carrier responded by forwarding his medical records to Dr. Barrash, along with Dr. Pisharodi's medical reports and billing statements. Through its attorney, Keith N. Uhles ("Uhles"), the carrier asked that Dr. Barrash supply his "thoughts and opinions regarding the medical course undergone by Mr. Escobedo." Specifically,

Dr. Barrash was asked to evaluate Dr. Pisharodi's treatment of Escobedo, including whether the surgery performed by Dr. Pisharodi exceeded the treatment to which it had consented. Dr. Barrash responded in a letter addressed to Uhles.

After learning of Dr. Barrash's letter to Uhles, Dr. Pisharodi sued Dr. Barrash and Houston Neurosurgical Associates, P.A., a group with which Dr. Barrash practices medicine (collectively the "defendants"). He claimed that the statements made in Dr. Barrash's letter were libel per se. The defendants moved for summary judgment, claiming that the statements were absolutely privileged and therefore not actionable because they were: (a) pure expressions of opinion, and (b) made in connection to a judicial proceeding. Dr. Pisharodi argued that summary judgment for the defendants was improper because the statements were not pure expressions of opinion and because the defendants had failed to show that the letter was prepared in contemplation of a judicial proceeding. According to Dr. Pisharodi, even if the defendants had made such a showing, a genuine issue of material fact exists as to whether the letter was subsequently published outside the privileged context of judicial proceedings.

The trial court ruled for the defendants. It concluded that, as a matter of law, the contested statements were pure opinions. It further concluded that the publication of such statements to claim examiners working for the United States Department of Labor could not be the basis of a libel claim because such publication occurred in connection to a quasi-judicial proceeding. As such, the publication was absolutely privileged.

### A. Standard of Review

We review summary judgments de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695,

699 (Tex.1994); *Tex. Commerce Bank–Rio Grande Valley, N.A. v. Correa,* 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). In reviewing summary judgment evidence, the issue is whether the evidence establishes as a matter of law that there is no genuine issue of material fact as to one or more of the necessary elements of the plaintiff's cause of action. *See* TEX.R. CIV. P. 166(a); *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970); *Hartman v. Urban,* 946 S.W.2d 546, 548 (Tex.App.-Corpus Christi 1997, no writ). The standards for reviewing summary judgment evidence are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *see also Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### 1. Protected Speech

■ This is an action for defamation. It involves a claim of libel based on the letter sent by Dr. Barrash to Uhles. Defamation occurs when a false statement about a plaintiff is published to a third person without legal excuse, causing damages to the plaintiff's reputation. *See Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 921 (Tex.App.-Corpus Christi 1991, writ dism'd w.o.j.). Libel is defamation in written or other graphic form that tends to injure a person's reputation, exposing the person to public ha-

tred, contempt, or ridicule. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 2003); *Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 48 (Tex.App.-Corpus Christi 2001, no pet.). To recover for libel, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998); *see also Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989) (citing *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

■ In a libel action, the trial court initially must determine, as a matter of law, whether the words used are reasonably capable of defamatory meaning by considering the allegedly defamatory statement as a whole. *See Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 654–55 (Tex.1987); *Beaumont Enter. & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex.1985), *overruled on other grounds by Casso v. Brand,* 776 S.W.2d 551, 559 (Tex. 1989); *see also Durckel v. St. Joseph Hosp.,* 78 S.W.3d 576, 583 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The determination is based on how a person of ordinary intelligence would perceive the entire statement. *See generally Fitzjarrald v. Panhandle Publ'g Co.,* 149 Tex. 87, 228 S.W.2d 499, 504–505 (1950); *see also Bentley v. Bunton,* 94 S.W.3d 561, 579 (Tex.2002); *Durckel,* 78 S.W.3d at 583; *Garcia v. Burris,* 961 S.W.2d 603, 605 (Tex.App.-San Antonio 1997, pet. denied). This question is only submitted to a jury if the contested language is ambiguous or of doubtful import. *See Denton Pub. Co. v. Boyd,* 460 S.W.2d 881, 884 (Tex.1970); *Christy v. Stauffer Publ'n, Inc.,* 437

S.W.2d 814, 815 (Tex.1969). Otherwise, it is an issue of law for the court to decide. *See Musser,* 723 S.W.2d at 655; *Smith,* 687 S.W.2d at 730; *Boyd,* 460 S.W.2d at 884; *Christy,* 437 S.W.2d at 815; *Fitzjarrald,* 149 Tex. at 97, 228 S.W.2d 499.

In this case, Dr. Pisharodi claims that the statements made by Dr. Barrash in his letter to Uhles were libel per se because they accused Dr. Pisharodi of committing a crime. Dr. Barrash counters that the challenged statements were protected opinion speech. Whether allegedly defamatory statements are actionable or are instead protected opinion speech depends on a reasonable person's perception of the entire publication. *See Bentley,* 94 S.W.3d at 579; *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 115 (Tex.2000). To distinguish between fact and opinion, we are bound to use as our guide the United States Supreme Court's latest word on the subject, *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). *Bentley,* 94 S.W.3d at 579. As the Texas Supreme Court has explained, *"Milkovich* supplants various proposed dichotomies between fact and opinion." *Id.* at 580–81. The disavowed dichotomies include the four-part test established in *Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984) (en banc), and the rule of section 566 of the Restatement (Second) of Torts, RESTATEMENT (SECOND) OF TORTS § 566 (1977). *See Bentley,* 94 S.W.3d at 580–81. In lieu of such distinctions, *Milkovich* focuses the analysis on a statement's verifiability and the entire context in which it was made. *Id.* at 581.

■ In awarding summary judgment to Dr. Barrash, the trial court relied on the four-part test of *Ollman v. Evans.* Such reliance was erroneous. We now apply the appropriate standard articulated by *Milkovich,* beginning with a reproduction of Dr. Barrash's letter below.

Dear Mr. Uhles:

I have read your summary of March 21, 2000 concerning Mr. Ron [sic] Escobedo. Likewise, I have reviewed all of the medical records you sent me concerning his other evaluations, his preoperative comments by Dr. Pisharodi, and his operative note and subsequent care.

Needless to say, this is a travesty.

Dr. Pisharodi has wontedly [sic] disregarded that which was allowed by him. He obviously did it poorly and overcharged for a procedure that was not necessary.

Basically he has disregarded everything that was discussed with him and recommended and just went ahead and did a poorly executed, improperly done operation.

I will try to answer those questions posed in your letter of March 21, 2000. The surgery performed by Dr. Pisharodi was certainly not the same surgery which was authorized. It was what he wanted to do and not what was necessary and certainly not that which was approved. In my opinion it was totally unreasonable and substantially failed to meet the professional, recognized standards of that which was allowable and authorized.

At the present time, I do not think that 3 months is a sufficient postoperative course to determine whether Mr. Escobedo needs the 2 level lumbar laminectomy, diskectomy and fusion with instrumentation that Dr. Pisharodi has always been of the mind that needs to be done. Come hell or high water, he was going to see that this unnecessary procedure would be performed on this poor, unfortunate young man.

I think that before anyone allows Dr. Pisharodi to attack this young man again, he needs to see another physician.

Studies need to be done and appropriate care recommended.

In my opinion, the necessity, character and sufficiency of the medical care being given and recommended by Dr. Pisharodi is not comparable to the standard of medical care in this community or in his community.

If the procedure is necessary as recommended by Pisharodi, it is necessary because of his ill advised, poorly performed, unnecessary procedure not of the standard of care in any community. The stabilization at 2 levels was not necessary on this 24–year–old man's back when I saw him. If it is necessary now, it is necessary because of the arrogance and disregard to the patient's safety as exhibited by Dr. Pisharodi. Without question, this case needs to be taken to the Texas Board of Medical Examiners as a clear indication of an ill conceived, unauthorized, poorly performed, unnecessary surgery.

Needless to say, the gouging demonstrated on the billing of $14,200.00 was primarily for Dr. Pisharodi's benefit and certainly not for the patient. Were the procedure that was necessary performed on this young man, it would be somewhere in the $4,000.00–$5,000.00 range in a major medical center. Obviously, the fees in a major medical center would be more than those in an outlying area; however, as such that would have been indicated.

In my opinion, Dr. Pisharodi has assaulted this man under the guise of medical treatment.

Sincerely,

J. Martin Barrash, M.D.

We conclude that taken as a whole, this letter is capable of defamatory effect. Its overarching theme encompasses not only a scathing evaluation of Dr. Pisharodi's performance but an accusation that his actions in treating Escobedo amounted to nefarious criminal conduct, namely, assault. To charge one falsely with the commission of any crime for which he may be punished by imprisonment is libel per se. *Christy,* 437 S.W.2d at 815; *see also Democrat Publ'g Co. v. Jones,* 83 Tex. 302, 18 S.W. 652 (1892). In the letter, Dr. Barrash unmistakably accuses Dr. Pisharodi of assaulting his patient. He also intimates that the assault was perpetrated for financial gain. Although Dr. Barrash couches his accusation of assault in terms of his professional opinion, such hedging does not mitigate the defamatory impact of a criminal accusation. *See Bentley,* 94 S.W.3d at 583–84. As the Supreme Court explained in *Milkovich:*

If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *See Cianci [v. New Times Publishing Co.,* 639 F.2d 54, 64 (2d Cir. 1980) ]. It is worthy of note that at common law, even the privilege of fair comment did not extend to "a false statement of fact, whether it was expressly stated or implied from an ex-

pression of opinion." Restatement (Second) of Torts, § 566, Comment a (1977). *Milkovich*, 497 U.S. at 18–19, 110 S.Ct. 2695. On this basis, we conclude as a matter of law that Dr. Barrash's letter was capable of defamatory meaning and is not protected opinion speech. The trial court erred in concluding otherwise.

### 2. Absolute Privilege

■ In its summary judgment order, the trial court declared that the statements at issue in the case were made in connection to a quasi-judicial proceeding. It concluded that "therefore, only as to publication ... to the Department of Labor's claim examiner, the complained of statements are absolutely immune from prosecution." We agree. Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942). This privilege extends to any statement made by the judges, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case. *James*, 637 S.W.2d at 916–17. In this case, Dr. Barrash's letter was made in connection to a worker's compensation claim. Such publication is privileged.

■ Although libelous statements made in connection to a judicial proceeding are absolutely privileged, re-publication of such statements outside of the judicial context waives the privilege. *See, e.g., Levingston Shipbldg. Co. v. Inland West Corp.*, 688 S.W.2d 192, 196 (Tex.App.-Beaumont 1985, writ ref'd n.r.e.); *De Mankowski v. Ship Channel Dev. Co.*, 300

S.W. 118, 122 (Tex.Civ.App.-Galveston 1927, no writ). In this case, Dr. Pisharodi alleges that Dr. Barrash's letter was republished outside of the judicial context in which it was originally made. He submitted two affidavits to the trial court in resisting the defendants' motion for summary judgment. The first affidavit is from Dr. Pisharodi, and in it, he states that Dr. Barrash's letter was "circulated to persons other than the hearing examiner and the parties to Mr. Escobedo's worker's compensation claim." He expressly bases this assertion on conversations that he has had with other doctors, insurance adjusters, attorneys and patients, including Escobedo. The second affidavit relied on by Dr. Pisharodi was made by Juan Escobedo. In it, Escobedo declares, "I am aware of the letter done by Dr. Barrash dated March 22, 2000 ... and Dr. Esses and others have commented to me about this letter and my care and treatment by Dr. Pisharodi." On the basis of those affidavits, Dr. Pisharodi argues that a genuine issue of material fact exists as to whether the defendants published the letter outside of the judicial proceeding. We agree.

The trial court's order is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.