**A.J. MORRIS, M.D., Appellant,**

v.

**Katherine L. BLANCHETTE, M.D., Appellee.**

No. 10–05–00017–CV.

Court of Appeals of Texas, Waco.

Oct. 26, 2005.

Rehearing Overruled Jan. 3, 2006.

S. Gary Werley, Law Office of S. Gary Werley, Ft. Worth, for appellant.

David Lee Crawford, Phelps Dunbar LLP, Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

**OPINION**

FELIPE REYNA, Justice.

Dr. A.J. Morris sued Dr. Katherine Blanchette for libel *per se* after Blanchette issued a peer review report to a worker's compensation carrier which was critical of Morris's treatment of a patient. Blanchette filed a traditional summary judg-

ment motion which the court granted. Morris contends in his sole issue that the court erred by granting the summary judgment motion because: (1) a genuine issue of material fact remains on the question of whether the statements at issue can be considered constitutionally protected opinions; (2) a single statement can give rise to a claim for libel *per se,* even if the statement does not suggest a habitual course of similar conduct; (3) the statements at issue are libelous *per se* because they do not require extrinsic evidence to establish their defamatory nature; (4) Morris's participation in the worker's compensation system does not establish consent "to defamatory or untrue statements" made in the course of the peer review system; and (5) the statements are not privileged at common law or under the Labor Code. We will affirm.

## Background

According to the summary judgment record, Morris treated Lawrence Davis for a lower back injury which he sustained at work on March 14, 2002. Among other things, Morris prescribed Lortab and later Xanax for Davis. Morris saw Davis on a regular basis for several months. He recommended physical therapy and that Davis not work. On August 7, Morris concluded that Davis had achieved maximum medical improvement and assigned him a five percent impairment rating. Morris continued to see Davis thereafter, maintaining the recommendation that Davis not work and continuing the prescriptions for Lortab and Xanax.

An insurance adjustor requested that Blanchette conduct a peer review apparently to evaluate the medical necessity of Davis's treatment regimen. According to Blanchette's report, the observations and opinions given therein were "based solely upon the chart data available for review."

Blanchette did not personally examine Davis. To paraphrase, Blanchette concluded that, after Davis attained maximum medical improvement, there should be no medical necessity for further physical therapy or prescription medications.

The following excerpts from Blanchette's four-page report form the basis for Morris's lawsuit.

Dr. Morris continued to follow the claimant. On 08/26/02, the physician documented that the claimant "had pain and spasms." Unfortunately, he kept the claimant in an off work status and continued to prescribe Lortab and Xanax.

. . . .

By definition, maximum medical improvement means that the claimant has reached a plateau in the course of illness. It may be possible that this claimant may need to continue taking some medications, preferably of an over-the-counter type, to maintain that status. However, it would *not* really be appropriate to continue treating the claimant on an ongoing basis with any other additional types of therapy.

There would be no medical necessity for any additional treatment such as, physical therapy, work hardening, work conditioning, injections, prescription medications, or further diagnostic testing.

. . . .

FINAL CONCLUSIONS

. . . .

(2) A soft tissue injury should stabilize within a period of six to twelve weeks. This claimant was at maximum medical improvement by 08/07/02. There would be no medical necessity for any additional physical therapy, work hardening, work conditioning, or prescription medications.

Morris contends that the report is defamatory because it accuses him of prescribing medicine without "a valid medical purpose," which is a felony offense under the Health and Safety Code. *See* Tex. Health & Safety Code Ann. §§ 481.071(a), 481.128 (Vernon 2003).

## Fact or Opinion

■ The determination of "whether a publication is an actionable statement of fact or a constitutionally protected expression of opinion" "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex.2002) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex.2000)) (second quotation only). A statement is considered to be an opinion when, upon consideration of "the entire context in which it was made," it cannot be objectively verified. (*See Bentley*, 94 S.W.3d at 581; *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990)).

Thus in *Milkovich*, the Supreme Court considered a newspaper column in which the author accused a high school wrestling coach (Milkovich) of lying in a judicial proceeding concerning an altercation that happened at a wrestling match. *See Milkovich*, 497 U.S. at 3–5, 110 S.Ct. at 2697–98. In determining whether the statements at issue constituted subjective opinion or objectively verifiable facts, the Court observed:

We also think the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false. A determination whether petitioner lied in this instance can be made on a core of objective evidence by comparing, *inter alia*, petitioner's testimony before the OHSAA board with his subsequent testimony before the trial court. As the *Scott* court noted regarding the plaintiff in that case: "[W]hether or not H. Don Scott did indeed perjure himself is certainly verifiable by a perjury action with evidence adduced from the transcripts and witnesses present at the hearing. Unlike a subjective assertion the averred defamatory language is an articulation of an objectively verifiable event." So too with petitioner Milkovich.

*Id.* at 21–22, 110 S.Ct. at 2707 (quoting *Scott v. News–Herald*, 25 Ohio St.3d 243, 252, 496 N.E.2d 699, 707 (1986)).

■ As the Supreme Court of Texas has unambiguously stated, "To distinguish between fact and opinion, we are bound to use as our guide the United States Supreme Court's latest word on the subject, *Milkovich v. Lorain Journal Co.*" *Bentley*, 94 S.W.3d at 579. Resolution of this issue is a question of law. *Id.* at 580.

## Application

■ Morris contends that the statements at issue here are like those found defamatory in *Pisharodi v. Barrash*, which also involved a peer review on medical necessity conducted for a worker's compensation insurance carrier. 116 S.W.3d 858, 860 (Tex.App.-Corpus Christi 2003, pet. denied). However, a review of excerpts from the statements at issue in *Pisharodi* reveals that they are not comparable.

In that case, the evaluating physician made numerous inflammatory remarks in the course of concluding that in his opinion the treatment recommended by the physician being evaluated was not medically necessary. Here are some excerpts:

Needless to say, this is a travesty.

. . . .

Basically he has disregarded everything that was discussed with him and recom-

mended and just went ahead and did a poorly executed, improperly done operation.

. . . .

The surgery performed by Dr. Pisharodi was certainly not the same surgery which was authorized. It was what he wanted to do and not what was necessary and certainly not that which was approved. In my opinion it was totally unreasonable and substantially failed to meet the professional, recognized standards of that which was allowable and authorized.

. . . . Come hell or high water, he was going to see that this unnecessary procedure would be performed on this poor, unfortunate young man.

I think that before anyone allows Dr. Pisharodi to attack this young man again, he needs to see another physician.

. . . .

If the procedure is necessary as recommended by Pisharodi, it is necessary because of his ill advised, poorly performed, unnecessary procedure not of the standard of care in any community.

The stabilization at 2 levels was not necessary on this 24–year–old man's back when I saw him. If it is necessary now, it is necessary because of the arrogance and disregard to the patient's safety as exhibited by Dr. Pisharodi.

Without question, this case needs to be taken to the Texas Board of Medical Examiners as a clear indication of an ill conceived, unauthorized, poorly performed, unnecessary surgery.

Needless to say, the gouging demonstrated on the billing of $14,200.00 was primarily for Dr. Pisharodi's benefit and certainly not for the patient. . . .

In my opinion, Dr. Pisharodi has assaulted this man under the guise of medical treatment.

*Pisharodi,* 116 S.W.3d at 862–63.

The Corpus Christi Court characterized Barrash's report as "not only a scathing evaluation of Dr. Pisharodi's performance but an accusation that his actions in treating Escobedo amounted to nefarious criminal conduct, namely, assault." *Id.* at 863. Blanchette's report simply does not rise to this level.

First, the nature of the injury being reviewed in this case, a lower back injury, is often difficult to objectively verify. Thus, appellate courts have frequently affirmed zero damages verdicts in cases involving back injuries. *See e.g. Gonzalez v. Wal–Mart Stores, Inc.,* 143 S.W.3d 118, 123–24 (Tex.App.-San Antonio 2004, no pet.); *Dunn v. Bank–Tec South,* 134 S.W.3d 315, 324–26 (Tex.App.-Amarillo 2003, no pet.); *Biggs v. GSC Enters., Inc.,* 8 S.W.3d 765, 768–69 (Tex.App.-Fort Worth 1999, no pet.); *Crow v. Burnett,* 951 S.W.2d 894, 897–99 (Tex.App.-Waco 1997, pet. denied).

Second, in the worker's compensation system, the claimant, the provider, and the carrier all have the right to an independent review when there is a dispute on the issue of medical necessity. *See* 28 TEX. ADMIN. CODE § 133.308 (2005) (Tex. Dept. of Ins., Div. of Workers' Compen.). It is imperative to the effectiveness of the independent review system that an evaluating physician or panel be allowed to plainly state its opinion regarding whether the treating physician has provided or recommended medically necessary treatment. A holding that a report like Blanchette's is defamatory would undermine this system.

Finally, a peer review report like Blanchette's which concludes that the treating physician has exceeded that which is medically necessary can be made without the

"scathing," inflammatory rhetoric employed in *Pisharodi.* In our view, Blanchette's report maintains the appropriate tenor and does not go beyond what was necessary to state her opinion that Morris's treatment exceeded that which was medically necessary.

Accordingly, we hold as a matter of law that Blanchette's report contains her "constitutionally protected expression of opinion" and is thus not defamatory. *See Bentley,* 94 S.W.3d at 579. Therefore, we overrule Morris's sole issue and affirm the judgment.

Chief Justice GRAY concurring in the result without a separate opinion.