NUMBER 13-05-744-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MADHAVEN PISHARODI, M.D., Appellant,


v.



J. MARTIN BARRASH, M.D. AND

HOUSTON NEUROSURGICAL

ASSOCIATES, P.A., Appellees.

 


On appeal from the 103rd District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 In a single issue, appellant, Madhavan Pisharodi, M.D., contends the trial court
erred in granting a no-evidence motion for summary judgment in favor of appellees, J.
Martin Barrash, M.D. and Houston Neurosurgical Associates, P.A. Because we agree with
the trial court that Barrash presented no evidence to support a fact issue as to the
challenged element of re-publication, we affirm the trial court's judgment. 

Background


 This is the second time appellant is before this Court challenging the trial court's
order granting summary judgment in appellees' favor. Four years ago, in Pisharodi v.
Barrash ("Barrash I"), (1) this Court reversed the trial court's order granting a traditional
motion for summary judgment (2) in appellees' favor and remanded the case to the trial court. 
Thereafter, on July 1, 2005, appellees filed a no-evidence motion for summary judgment. (3) 
Appellant filed a response on August 4, 2005, and the trial court granted appellees' motion
on November 8, 2005. Appellant appeals from the November 8, 2005 order.

 The factual background of this case is set forth in our earlier opinion. (4) Briefly,
appellant sued appellees for libel arising out of a letter written by Dr. Barrash regarding his
evaluation of Dr. Pisharodi's treatment of a patient (Juan Escobedo). (5) Dr. Barrash's letter,
which was addressed to an attorney for Escobedo's insurance carrier, discussed a dispute
over Escobedo's treatment for his work-related injuries. (6) The trial court found, and this
Court agreed, that the statements in the letter were made in connection with a quasi-judicial proceeding (a worker's compensation claim) and were therefore privileged. (7) This
Court found, however, that there was a fact issue as to whether appellees republished the
letter outside the context of the quasi-judicial proceeding, and on that basis, reversed the
summary judgment in appellees' favor and remanded to the trial court. (8)

 Appellees filed a no-evidence motion for summary judgment, contending there is
no evidence that they republished, or authorized republication of, any of the allegedly
libelous statements outside the context of the quasi-judicial proceeding. Appellant filed a
response, in which he incorporated by reference "previously submitted affidavits and
documentary evidence." In his appellate brief, appellant argues that his own affidavit and
the affidavit of Escobedo raise a fact issue as to whether appellees republished the
allegedly defamatory statements outside the quasi-judicial context. We presume,
therefore, that the "previously submitted affidavits" referenced in appellant's response are 
the affidavits of appellant and Escobedo. (9)

 Appellees filed objections to both affidavits. Specifically, appellees objected to
appellant's affidavit on grounds that: (1) it fails to state that it is based on the affiant's
personal knowledge and that the facts in it are true; (2) the affidavit testimony is
conclusory; (3) it contains statements that constitute hearsay; and (4) it contains
statements that are not clear, positive, direct, and susceptible to being readily controverted. 
Appellees objected to Escobedo's affidavit on grounds that: (1) it is not based on personal
knowledge; (2) it contains conclusory statements; (3) it contains hearsay; and (4) it
contains statements that are outside the affiant's personal knowledge. The objections
were filed August 10, 2005. As noted above, the trial court did not grant summary
judgment until November 8, 2005. Appellant did not respond to the objections. The trial
court overruled appellees' objections. 

Standard of Review and Applicable Law 


 The standard of review for the grant of a motion for summary judgment is
determined by whether the motion was brought on no-evidence or traditional grounds. (10) 
A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court
applies the same legal sufficiency standard on review. (11) In an appeal of a no-evidence
summary judgment, this Court reviews the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. (12) If the non-movant produces
evidence to raise a genuine issue of material fact, summary judgment is improper. (13) All
that is required of the non-movant is to produce a scintilla of probative evidence to raise
a genuine issue of material fact. (14) "Less than a scintilla of evidence exists when the
evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" (15) 
Conversely, more than a scintilla exists when the evidence "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." (16) In determining
whether the non-movant has produced more than a scintilla of evidence, we review the
evidence in the light most favorable to the non-movant, crediting such evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could
not. (17) The burden of producing evidence is entirely on the non-movant; the movant has
no burden to attach any evidence to the motion. (18)

 The admission or exclusion of summary-judgment evidence rests in the sound
discretion of the trial court. (19) A trial court abuses its discretion if it acts without reference
to any guiding rules or principles or acts in an arbitrary or unreasonable manner. (20) A trial
court does not abuse its discretion if it decides a matter within its discretion differently than
the appellate court would. (21)

 Texas law recognizes two types of defamation: libel and slander. (22) An action for
libel requires publication to a third party of written defamatory words about the plaintiff. (23)
Slander requires defamatory words about the plaintiff to be spoken, without legal excuse,
to a third party. (24) 

Analysis 


 Appellant argues that the "law-of-the-case doctrine" applies because in Barrash I,
we held there was a fact issue as to whether appellees republished Dr. Barrash's letter
outside the context of the quasi-judicial proceeding. (25) We disagree.

 The law-of-the-case doctrine is defined as that principle under which questions of
law decided on appeal to a court of last resort will govern the case throughout its
subsequent stages. (26) By narrowing the issues in successive stages of the litigation, the
law-of-the-case doctrine is intended to achieve uniformity of decision as well as judicial
economy and efficiency. (27) The doctrine is based on public policy and is aimed at putting
an end to litigation. (28) A decision rendered on an issue before an appellate court does not
absolutely bar reconsideration of the same issue on a second appeal. (29) Application of the
doctrine lies within the discretion of the court, depending on the particular circumstances
surrounding that case. (30) The doctrine does not apply if a "later stage of litigation presents
different parties, different issues, or more fully developed facts." (31)

 Barrash I addressed appellees' traditional motion for summary judgment, in which
they argued that Dr. Barrash's statements were privileged because they were pure
expressions of opinion made in the context of a judicial proceeding. (32) At issue in the
present case is appellees' no-evidence motion, in which they contend that there is no
evidence that they republished, or authorized republication of, any of the allegedly libelous
statements outside the quasi-judicial context. Moreover, on remand, subsequent to our
opinion in Barrash I, appellees objected to appellant's summary judgment evidence,
contending that it does not constitute proper summary judgment evidence and cannot be
considered. Under these circumstances, we conclude that the law-of-the-case doctrine is
inapplicable. (33) 

 Appellant contends that "[t]he affadavits [sic] of Dr. Pisharodi and Escobedo raised
the fact issue that Dr. Barrash and/or others had published his letter." Initially, we note that
Dr. Pisharodi's affidavit lacks any statement that it is based on the affiant's personal
knowledge. "Rule 166a(f) requires that 'supporting and opposing affidavits shall be made
on personal knowledge, shall set forth such facts as would be admissible in evidence, and
shall show affirmatively that the affiant is competent to testify to the matters stated
therein.'" (34) We need not address the deficiencies in the affidavits of Dr. Pisharodi and
Escobedo, however, because even if we consider them as summary judgment evidence, 
as the trial court did, neither affidavit provides any evidence that appellees republished the
statements in Dr. Barrash's letter outside the quasi-judicial context. (35) 

 Dr. Pisharodi's affidavit provides:

 My name is Madhavan Pisharodi, M.D. I am a medical doctor by
profession an [sic] I have been practicing neurosurgery in Brownsville, Texas
for over ten years. I am also the plaintiff in Cause No. 2001-03-001200-D
against Dr. J. Martin Barrash. On March 22, 2000[,] Dr. Barrash wrote a
letter, that to anyone of reasonable sensibilities, would agree harms my
reputation by stating that I attacked and assaulted a patient of mine as well
as performed unnecessary and sloppy surgery on Juan Escobedo. The
contents of the letter are false. In fact Mr. Escobedo ultimately had the
surgery that I recommeded and which Dr. Barrash thought was unnecessary.


 This letter has been circulated to persons other than the hearing
examiner and the parties to Mr. Escobedo's worker's compensation claim. 
I have talked to insurance adjusters who have become aware to [sic] Dr.
Barrash's letter. I have also talked to other patients with worker's
compensation claims who have been told about this letter claiming to have
heard this from insurance representatives or persons who worked with Mr.
Escobedo. Furthermore, in order to be able to discuss the letter's contents
and explain my actions to Mr. Escobedo, his family and his attorney, I was
required to share the letter with some of my colleagues, including Dr. Jose
Kuri.


 I was also told by Mr. Escobedo that Dr. Stephan Esses, a
subsequent treating physician of Mr. Escobedo and his staff [sic] either had
a copy of the letter or were [sic] aware of the letter. Because of this letter Mr.
Escobedo has also consulted with other lawyers who have made inquiries of
me and of my attorney regarding its contents and my treatment of Mr.
Escobedo.


 Shortly after I gave Dr. Barrash notice of my intent to file a claim
against him but before filing suit, I received a notice of a complaint filed
against me with the Texas State Board of Medical Examiners, concerning my
care and treatment of Mr. Juan Escobedo. I received this notice on January
18, 2001. During the process of investigating this complaint, which was
instigated by Dr. Barrash, the March 22, 2000 letter was again discussed and
I had to reveal it [sic] contents to other colleagues in order to defend myself. 



 Dr. Barrash's letter has harmed my standing and reputation with
insurance companies, patients, the State Board of Medical Examiners, my
staff, attorneys in this community and colleagues. At this time I have lost at
least one patient in addition to Juan Escobedo who also works at Amfels
because of this letter. 


Juan Escobedo's affidavit provides:


 My name is Juan Escobedo. I am over the age of 18 years, of sound
mind and fully competent to make this affidavit. I am personally acquainted
with the facts herein stated and they are all true and correct. I also verify that
the copies of the letter dated June 14, 2000 from me to Dr. Pisharodi and the
letter from my attorney at that time, Jack Carinhas, Jr. dated July 28, 2000
attached to this affidavit as exhibits A1 and A2 are true and correct copies
of the original documents. Furthermore, I would like to say that I gave
consent to Dr. Pisharodi and requested that he perform the surgery on me
of December 23, 1999. In fact the surgery I needed, wanted and consented
to was a more extensive surgery as recommended by Dr. Pisharodi. This
surgery was ultimately done by Dr. Esses in Houston after Dr. Barrash wrote
this letter about Dr. Pisharodi. I am aware of the letter done by Dr. Barrash
dated March 22, 2000[,] and know that it contains false statements about Dr.
Pisharodi. I am also know [sic] that Dr. Esses and others have commented
to me about this letter and my care and treatment by Dr. Pisharodi. I do not
know how they found out about this letter because my claim was handled
and settled without going to court or any hearings.


 The issue is whether appellant's proffered summary-judgment evidence establishes
that appellees republished Dr. Barrash's statements outside the quasi-judicial context. We
conclude that it does not. Dr. Pisharodi's affidavit uses the passive voice to assert that the
letter "has been circulated," and that others "have become aware" and "have been told" of
the letter. Dr. Pisharodi also asserts that he was compelled to share the letter with others. 
Nowhere does he assert that appellees republished, or authorized republication of, the
allegedly defamatory statements in the letter. Escobedo's affidavit states that Dr. Esses
and others learned of the letter, but states that Escobedo "do[es] not know how they found
out."

Conclusion


 Having reviewed the evidence in the light most favorable to appellant and
disregarded all contrary evidence and inferences, we conclude that appellant produced no
evidence that appellees republished, or authorized republication of, the allegedly
defamatory statements. Accordingly, we hold that the trial court properly granted summary
judgment in appellees' favor. We overrule appellant's issue and affirm the trial court's
judgment. 


 

 LINDA REYNA YAÑEZ,

 Justice




Memorandum opinion delivered and filed 

this the 20th day of September, 2007.
1. Pisharodi v. Barrash, 116 S.W.3d 858, 864 (Tex. App.-Corpus Christi 2003, pet. denied). 
2. See Tex. R. Civ. P. 166a(c).
3. See id. 166a(i). 
4. See Barrash, 116 S.W.3d at 860. 
5. See id. 
6. See id. 
7. See id. at 864.
8. See id.
9. See Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd., 190 S.W.3d 742, 746 (Tex.
App.-San Antonio 2005, no pet.) (noting that "when presenting summary-judgment proof, a party must
specifically identify the supporting proof on file that it seeks to have considered by the trial court. Attaching
entire documents to a motion for summary judgment or to a response and referencing them only generally
does not relieve the party of pointing out to the trial court where in the documents the issues set forth in the
motion or response are raised.") (Internal citations omitted). 
10. See Tex. R. Civ. P. 166a(c), (i); see also Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.-Corpus Christi 2003, no pet.) (op. on reh'g). 
11. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Ortega, 97 S.W.3d at 772. 
12. City of Keller v. Wilson, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence"
motion for summary judgment is effectively restricted to the evidence contrary to the motion); Ortega, 97
S.W.3d at 772. 
13. Tex. R. Civ. P. 166a(i).
14. Ortega, 97 S.W.3d at 772. 
15. Id. (quoting Kindred v. Con/Chem Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 
16. Id. (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). 
17. Tamez, 206 S.W.3d at 582; City of Keller, 168 S.W.3d at 827. 
18. Tex. R. Civ. P. 166a(i).
19. Alaniz v. Hoyt, 105 S.W.3d 330, 341 (Tex. App.-Corpus Christi 2003, no pet.). 
20. Id. 
21. Id.
22. Id. at 345. 
23. Id.
24. Id.
25. See Barrash, 116 S.W.3d at 864.
26. Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003) (citing Hudson v. Wakefield, 711
S.W.2d 628, 630 (Tex. 1986)). 
27. Id. 
28. Id.
29. Id.
30. Id. 
31. Rodgers v. Comm'n for Lawyer Discipline, 151 S.W.3d 602, 609 (Tex. App.-Fort Worth 2004, pet.
denied). 
32. See Barrash, 116 S.W.3d at 860.
33. See Rodgers, 151 S.W.3d at 609.
34. Ryland Group v. Hood, 924 S.W.2d 120, 122 (Tex. 1996) (citing Tex. R. Civ. P. 166a(f); Humphreys
v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994) (affidavit lacking testimony that statements were unequivocally
based on personal knowledge was legally insufficient)); AMS Constr. Co. v. Warm Springs Rehab. Found.,
94 S.W.3d 152, 157 (Tex. App.-Corpus Christi 2002, no pet.).
35. We note that the trial court judge wrote a letter to the parties explaining the basis for his ruling. The
letter provides, in pertinent part:


It is not only necessary for the plaintiff to establish that the letter got distributed to persons
outside the judicial process, it is also necessary that he prove that this was done by the
defendant. Although there is substantial evidence as pointed out by the Court of Appeals and
as shown by the two affidavits that the letter and information therein fell into person's hands
outside the judicial process, there is no evidence that this was brought about by the
defendant. . . . There is no evidence in this case that the defendant caused the republication.