

# NUMBER 13-13-00210-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

YOLANDA TERAN BEGUM,                                                    Appellant,

v.

JOSEFINA AUTEN,                                                         Appellee.

## On appeal from the 444th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, Yolanda Teran Begum, appeals from the trial court's summary judgment

in favor of appellee, Josefina Auten. By one issue, appellant contends that the trial court

should have denied Auten's motion for no-evidence summary judgment because

appellant produced more than a scintilla of probative evidence raising a fact issue on each of the elements challenged by Auten.[1]  We reverse and remand.

## I.    BACKGROUND

Appellant announced her candidacy for the office of Cameron County Justice of the Peace in 2011, and she began campaigning.  According to appellant, Auten published statements on appellant's Facebook page and other numerous social media sites and blog pages using the fictitious identity of "Scarlett O'Hara."  Appellant sued Auten for defamation alleging that through these published statements, Auten accused appellant of theft, corruption, and sexual misconduct.

Auten filed a motion for no-evidence summary judgment stating that there is no evidence to support the following allegations:  (1) Auten published a statement; (2) the statement referred to appellant; (3) the statement was defamatory; (4) the statement was false; and (5) "With regard to the truth of the statement, the defendant was acting with actual malice."[2]  Appellant filed a response with several attached exhibits claiming that the evidence showed that Auten, using the fictitious identity, published many statements about appellant that she alleges were defamatory and defamatory per se.  Appellant also

---

[1] Auten has not filed a brief.

[2] Auten did not allege that there is no evidence of damages in her motion for summary judgment. Therefore, although appellant argues that there is evidence of damages, the trial court could not have granted the summary judgment on that basis, and we need not address it.  *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Hercules Offshore, Inc. v. Excell Crane & Hydraulics, Inc.*, 454 S.W.3d 70 (Tex. App.—Houston [1st Dist.] 2014, no pet. hist.) (noting parenthetically that the "trial court may not grant summary judgment on [a] ground not included in summary-judgment motion, and appellate court may not affirm summary judgment on ground not included in motion" and citing *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993)).

2

alleged that the evidence showed that Auten knew that her published statements were false when she made them.[3] The trial court granted Auten's motion. This appeal ensued.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

In a no-evidence motion for summary judgment, we consider the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)); *see City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005).  A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.  *King Ranch, Inc.*, 118 S.W.3d at 751.  A no-evidence summary judgment is properly granted if the respondent does not bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact.  *Id.*

> Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact.  More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.

---

[3] We note that in her response, appellant mistakenly referred to Auten's motion for no-evidence summary judgment as a motion for traditional summary judgment.  However, appellant attached evidence to her response and argued that there is evidence of the elements Auten challenged.  Thus, if appellant's attached evidence provides more than a scintilla of probative evidence raising a fact issue on each of the challenged elements, the trial court should have denied Auten's motion for no-evidence summary judgment despite appellant's reference to it as a motion for a traditional summary judgment.  *See Cohen v. Landry's Inc.*, 442 S.W.3d 818, 823 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) ("The nature of a motion is determined by its substance, not its title or caption." (citing *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008); *Rush v. Barrios*, 56 S.W.3d 88, 93 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

*Id.* (internal quotations and citations omitted).

A defamation plaintiff prevails by proving that the defendant (1) published a statement (2) that was defamatory about the plaintiff (3) "while acting with . . . actual malice, if the plaintiff was a public official or public figure . . . regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). "The First Amendment to the United States Constitution and article 1, section 8 of the Texas Constitution require a plaintiff to establish that the defendant published a false, defamatory statement of fact, rather than an opinion, as an essential element of a cause of action for [defamation]." *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 383 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

However, if an alleged defamatory statement of opinion implies undisclosed facts it may be actionable. *Bentley v. Bunton*, 94 S.W.3d 561, 584 (Tex. 2002).

> In a libel action, the trial court initially must determine, as a matter of law, whether the words used are reasonably capable of defamatory meaning by considering the allegedly defamatory statement as a whole. The determination is based on how a person of ordinary intelligence would perceive the entire statement. This question is only submitted to a jury if the contested language is ambiguous or of doubtful import.

*Pisharodi v. Barrash*, 116 S.W.3d 858, 861 (Tex. App.—Corpus Christi 2003, pet. denied). Opinions or ideas that include implied assertions of objective fact may be actionable in a defamation suit. *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 921 (Tex. App.—Corpus Christi 1991, writ dism'd w.o.j.) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) ("It is worthy of note that at common law, even the privilege of fair comment did not extend to 'a false statement of fact, whether it was expressly stated or implied from an expression of opinion.'") (citing Restatement (Second) of Torts, § 566)).

4

"Malice does not require personal animosity" and "[u]nlike common-law malice, it does not include ill-will, spite, or evil motive." *DR Partners v. Floyd*, 228 S.W.3d 493, 497 (Tex. App.—Texarkana 2007, pet. denied) (internal quotations and citations omitted). Actual malice means that the defendant published the defamatory statement with "'knowledge that it was false or with reckless disregard of whether it was false or not.'" *WFAA-TV, Inc.*, 978 S.W.2d at 571 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).

> The actual malice standard requires that a defendant must subjectively possess significant doubt about the truth of his statements at the time they are made. Actual malice focuses on the defendant's state of mind "regarding the import of the statements actually made." "[A] defendant cannot be said to have made a statement with actual malice if he did not know or have reckless disregard for whether the statement communicated a falsehood."
>
> . . . .
>
> Actual malice cannot be inferred from the falsity of the statement alone. However, actual malice can be proven with circumstantial evidence. "The defendant's state of mind can—indeed, must usually—be proved by circumstantial evidence." Actual malice may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the words or acts of the defendant before, at, or after the time of the communication.

*DR Partners*, 228 S.W.3d at 498 (internal citations omitted).

## III.   DISCUSSION

In her response, appellant provided several statements made on Facebook by "Scarlett O'Hara." Appellant provided Auten's deposition testimony where she admitted that she posted the complained-of statements about appellant using the alias "Scarlett O'Hara" on different social media sites including Facebook. Appellant cited attached copies of the online postings, which included the statements made by Auten under the alias "Scarlett O'Hara." Those statements include, among others, the following:

5

Yolanda had an affair with a married man why don't you tell people about that. Assholes. Yolanda Begum is a fat worn [sic] that is looking for anyone to listen to her crys [sic] out for help. Vote hell no too [sic] that fat worm for JP. If she is for the children it [sic] only for hers..[sic] I laugh at them.

It was only when she lost her ass in San Antonio Texas that her lover/business partner ripped her off..[sic] That's when she came back to Brownsville and made her way back into the late Mr. Begum's life..[sic] How convenient!!! I am sorry but the truth must come out. This woman is a fake and will use her last name as a way to get a vote..[sic] I can't wait to show up with my children and un-mask her for who she truly is..[sic] If you scratch your ass long enough you'll smell shit they say…[sic] I promise you this [in] her case you don't have to scratch long.

Here is my problem Yolanda Begum..[sic] Get you [sic] son fixed it so that all the rulings in the courtroom to collect the money left to the heirs of Michael Jonathan Begum first son of Mike Sr. not be collected.

Well I have gotten calls as to why I think Yoland[a] Tarzan Begum wants to run for JP well I think here is our answer..[sic] She wants to play Monopoly in the Courts of Brownsville. How freaking convenient…[sic] The only card she should put is GO to Hell, go directly to hell. Do not pass go just go..[sic] The last think [sic] this Begum's who think their Shit don't stink…[sic]

He hated Yolanda Tarn after finding her in bed with a married man…[sic] This married man took her for a ride and robbed her blind. Then he dumped her, when she was in the hospital in San Antonio. What goes around comes around Yolanda Begum.

I said I was not going to say any bad words toward Yolanda Begum but as it turns out those are the only words that come to my mind..[sic] It burns my ass to see that the money that was stolen from my children is [being] used for her and her family for further and future raming..[sic] This is how evil and cruel this people are..[sic] The Devil wears Prada…[sic] Yolanda Begum has[.]

I wish I was in Brownsville and get my son in front of a [crowd] and tell them why it would be a huge mistake to elect more crooks into Office..[sic] Stay positive you got this..[sic] They say 20 years['] experience..[sic] is an over night success..[sic] You have experience.

Appellant also cited evidence that Auten sent an email asking for appellant to help her with her children's inheritance from their father's estate and that appellant never

6

responded. At her deposition, Auten stated that she began posting the complained-of negative statements about appellant after appellant failed to respond to her request for help.

Auten's deposition testimony also shows that Auten did not deny making the complained-of statements and instead claimed that she had been lead to believe that the statements were true and explained that the statements were her summaries of assumptions that she made about appellant based on information she heard about appellant. When asked at her deposition to explain what she meant by the phrase "play Monopoly in the Courts," Auten said, "I don't know, but once again, the whole ambulance chasing and your practice and, you know—we—y'all have a bad record and I refer to it that way. Clearly I didn't think she was a candidate for—to be a judge." Auten stated, "You know, I don't know. I've been in—in the court where people pass the money over to the judge and he slips it in his pocket . . . . May—maybe it was Limas. I don't remember. I can't remember. It could have been Limas." Auten agreed that she had no knowledge of appellant ever stealing or being caught stealing.

Auten clarified that when she wrote that appellant had her "son fix[] it so that all the rulings in the courtroom to collect the money left to the heirs of Michael Jonathan Begum [(Auten's children's father)] . . . not be collected," she meant that appellant interfered with the funeral arrangements and that appellant somehow "screwed" Auten's children in that they were asked to leave their home when their father died. Auten had no knowledge regarding how appellant allegedly had her son "fix" the rulings of the probate court in order to prevent Auten's children from collecting their share of their father's estate, as Auten claimed in her online postings.

7

When asked if she had any evidence that appellant had stolen money from her children's father's estate, Authen said, "None." Appellant's trial counsel asked, "So when you posted that 'It burns my ass to see that the money that was stolen from my children is [being] used for her and her family for further and future raming..[sic],' what evidence do you have when you say that she stole that money from the estate?" Auten replied, "Just, like I said, the stuff that I read through my lawyer, the $100,000 that was missing from [my children's father's] estate, or the check that was given to [my children's father] that was not part of the estate." Auten, however, acknowledged that she had no knowledge or proof that appellant stole any money from the estate.

When asked the name of the wife of the married man with whom appellant allegedly had an affair, Auten said, "I don't know. I just remember your dad [appellant's son represented her at the deposition] telling me about that. He came to the New Yorker at the Sunrise Mall very upset. And I was there. . . . Said that he had caught your mom in bed with some [married] man."

Here, based on Auten's admission that she posted the remarks about appellant online, we conclude that there is more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether Auten published the statements about appellant. *See WFAA-TV, Inc.*, 978 S.W.2d at 571. Moreover, because Auten's statements are somewhat ambiguous, we cannot say with certainty that the statements are mere opinion as a matter of law rather than statements constituting implied assertions of fact. *See Bentley*, 94 S.W.3d at 584; *Pisharodi*, 116 S.W.3d at 861 (providing that issue of whether the statement is an opinion or defamation goes to the jury if the nature of the statement is ambiguous). Therefore, we conclude that genuine issues of material fact exist as to the defamatory character of some of the statements contained in Auten's

8

online postings including those that appear to imply that appellant is corrupt and is a thief. *See Bentley*, 94 S.W.3d at 585 (concluding that the defendant's statement that a judge was "corrupt" was actionable because the statement included an implication that the defendant's opinion was based upon verifiable facts); *Shearson Lehman Hutton, Inc.*, 806 S.W.2d at 921 (explaining that opinions that imply assertions of fact are actionable in a defamation cause of action). Also, some of the statements, such as Auten's assertions that appellant had an affair with a married man and that she "fixed" the court proceedings in the probate court so that Auten's children could not collect their inheritance are not opinions as a matter of law. *See Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 383 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[T]he plaintiff must prove that the statements contained false, defamatory facts rather than opinions or characterizations. Whether a statement is an opinion or an assertion of fact is a question of law.") (internal citations omitted). Therefore, we conclude that there is more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether these statements are in fact defamatory. *See WFAA-TV, Inc.*, 978 S.W.2d at 571. Appellant also provided summary judgment evidence denying all of Auten's assertions. *See id.*

Finally, we conclude that because Auten admitted that she did not have any personal knowledge or evidence regarding any of her assertions about appellant and demonstrated at her deposition that she had become upset by appellant's failure to respond to the message asking for help in her children's case regarding their father's estate, there is more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether Auten knew her statements were in fact not true or had a

9

high degree of awareness of the probable falsity of the statements she published.[4] *See id.*; *Clark v. Jenkins*, 248 S.W.3d 418, 435 (Tex. App.—Amarillo 2008, pet. denied) ("In addition, although courts must be careful not to place too much reliance on factors such as motive, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence.").

Therefore, considering the evidence in the light most favorable to appellant and crediting the evidence reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not, because appellant offered more than a scintilla of probative evidence regarding each challenged element of her defamation claim, we conclude that the trial court should have denied Auten's motion for no-evidence summary judgment. *See King Ranch, Inc.*, 118 S.W.3d at 751; *see also City of Keller*, 168 S.W.3d at 825, 827. We sustain appellant's sole issue.

## IV. CONCLUSION

We reverse the trial court's judgment and remand for proceedings consistent with this opinion.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of April, 2015.

---

[4] It is up to the jury to determine whether these statements were in fact false. However, our standard of review requires that we view the evidence in the light most favorable to the non-movant, appellant who claims the statements are false. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)); *see City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005).