**DR PARTNERS, d/b/a The Sherman Herald Democrat, Appellant,**

v.

**Roy Vernon FLOYD, Appellee.**

**No. 06–07–00001–CV.**

Court of Appeals of Texas, Texarkana.

Submitted May 9, 2007.

Decided July 5, 2007.

---

494

Alan N. Greenspan, Jackson Walker, LLP, Dallas, for appellant.

J. Michael Young, Roger D. Sanders, Sanders, O'Hanlon & Motley, PLLC, Sherman, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

DR Partners, d/b/a The Sherman Herald Democrat, brings this interlocutory appeal, which challenges the trial court's denial of a motion for summary judgment in a defamation suit brought by Roy Vernon Floyd. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6) (Vernon Supp.2006). Floyd, a city commissioner of the City of Bonham and County Chair of the Fannin County Democratic Party, was accused by political rivals of stealing campaign signs on election day. The Herald Democrat, a newspaper owned by DR Partners, published an article headlined "Bonham official charged" which reported the accusation. Formal criminal charges had not been filed at the time of publication and, in fact, formal criminal charges were never filed against Floyd. Floyd brought suit against the Herald Democrat for libel, and the trial court denied the Herald Democrat's motion for summary judgment.

The Herald Democrat raises eight points of error on appeal. It claims that the trial court should have granted the Herald Democrat's traditional motion for summary judgment because it conclusively proved 1) the literal or substantial truth of the statements in the article, 2) the lack of actual malice, and 3) the article was privileged under TEX. CIV. PRAC. & REM.CODE ANN. § 73.002 (Vernon 2005). According to the Herald Democrat, the trial court also erred in denying its "no-evidence" motion for summary judgment because Floyd failed to present any evidence of 1) the falsity of the statements, 2) actual malice, and 3) the lack of privilege. In addition, the Herald Democrat claims that the trial court erred in admitting as summary judgment evidence a collection of stories printed from the internet and an article published on November 5, 2004, which clarified that no formal criminal charges had been filed against Floyd.

We agree with the Herald Democrat that Floyd presented no evidence of actual malice. Because this issue is dispositive, it is not necessary for us to decide the remaining issues raised by the Herald Democrat. This opinion assumes, without deciding, that the trial court did not err in admitting, over the Herald Democrat's objection, Floyd's summary judgment evidence. In addition, this opinion assumes, without deciding, that there are genuine issues of material fact concerning the substantial truth of the statements in the article.

## I. Factual Background

On Election Day, Curtis Grossclose, an election judge, and Glenn Whitaker reported to the Bonham Police Department that they had observed Floyd damaging and removing Republican campaign signs that had been posted near a Fannin County polling place. Whitaker indicated that, when approached by Whitaker and Grossclose, Floyd sped away. Whitaker and

Grossclose also reported that some Republican signs had been found by them in a dumpster behind Floyd's business. In his statement, Grossclose states he was advised by Larry Joe Ward, Chairman of the Fannin County Republican Party, to pursue charges.

The day after the election, Gary Carter, the Herald Democrat's city editor, received a tip from an anonymous caller that the Bonham Police Department was investigating charges that Floyd had stolen Republican campaign signs. Vicki Graves, a reporter for the Herald Democrat, inquired of Michael Bankston, the chief of the Bonham Police Department, regarding the allegations. Chief Bankston informed Graves that two citizens had accused Floyd, that the department was investigating, and that no formal criminal charges had been filed. Graves contacted Floyd, who denied the allegations. Graves then composed an article concerning the incident and turned it in to her editor; the lead sentence in the article was: "The Fannin County Republican party filed charges on election day at the Bonham Police Department against Bonham City Commissioner Roy Floyd." Darrell McCorstin, a wire editor with the Herald Democrat, assigned the article the headline "Bonham official charged"[1] and the article and headline were published two days after the election, on November 4, 2004, accompanied by Floyd's photograph.

The next day, November 5, 2004, the Herald Democrat published an article headlined "Herald Democrat corrects story about Bonham official." The four-sentence article states "[t]he *Herald Democrat* erred Thursday" and relates that no criminal charges have been filed against Floyd as a result of the complaint previously filed. Immediately beneath the above-mentioned article, the Herald Democrat also published a related item headlined "Fannin Democrats claim signs stolen" in which Fannin County Democrats and Republicans recounted incidents in which signs of both parties may have been pilfered by unknown thieves. The story repeated that a complaint had been filed against Floyd with the Bonham Police Department. In the article, Lisbeth Echeandia, a media relations worker for the Fannin County Democratic Party, is quoted as describing the complaint as "laughable" and speculating that the allegations were made because Floyd "refused to change parties" at the request of certain Republicans. The story noted that some of the signs may have been removed by the Texas Department of Transportation if they were placed illegally in a highway right-of-way. In the article, Graves stated that "Bankston said Wednesday that no charges have been filed and no warrants had been issued."

Ultimately, Floyd filed a libel suit against Larry Joe Ward, the chairman of the Fannin County Republican Party, who had first advised to pursue charges.[2] The petition was subsequently amended to include libel charges against the Herald Democrat, Graves, Whitaker, and Grossclose. In his sixth amended petition, Floyd deleted Graves as a defendant. The Her-

---

1. In his summary judgment affidavit, McCorstin stated that, in writing the headline, he may read "all or part of the article," that he attempts to "summarize the first paragraph or the first several paragraphs," and that he tries to "use, as much as possible, the words used by the reporter in the article for the headline."

2. In his deposition, Chief Bankston stated that the investigation ultimately determined that Floyd had not committed the alleged acts. The investigation concluded Floyd was not even in town at the time the alleged acts were committed. Bankston stated that no charges were ever filed against Floyd.

ald Democrat filed a mixed motion for summary judgment consisting of both a traditional motion for summary judgment and a no-evidence motion for summary judgment. The trial court denied the motion.

## II.  Standard of Review

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). A no-evidence summary judgment is essentially a pretrial motion for a directed verdict. We, therefore, apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003); *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Rodriguez,* 92 S.W.3d at 506; *Woodruff v. Wright,* 51 S.W.3d 727, 734 (Tex.App.-Texarkana 2001, pet. denied). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Chapman,* 118 S.W.3d at 751; *cf. City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). More

than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Chapman,* 118 S.W.3d at 750–51. A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of his claim. *Id.* at 751; *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). At the summary judgment stage, clear and convincing evidence of actual malice is not required. *Huckabee v. Time Warner Entertainment Co.,* 19 S.W.3d 413, 421 (Tex. 2000).

## III.  There Is No Evidence of Actual Malice

▮▮▮▮ A public official must prove actual malice as an element of a libel cause of action. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Malice does not require personal animosity.[3] Rather, actual malice in a libel case is a term of art. *Huckabee,* 19 S.W.3d at 420. "Unlike common-law malice, it does not include ill-will, spite, or evil motive." *Id.; Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). "Actual malice" means that defamatory communication was made either with knowledge of its falsity or with reckless disregard as to its truth. *Huckabee,* 19 S.W.3d at 420; *Randall's Food Mkts. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). To establish reckless disregard, a public official or public figure must prove that the

---

**3.** In fact, the Texas Supreme Court has held evidence of " 'hatred, spite, ill will, or desire to injure' " is not evidence of actual malice.

*Freedom Newspapers v. Cantu,* 168 S.W.3d 847, 858 (Tex.2005).

publisher "entertained serious doubts as to the truth of his publication." *Huckabee,* 19 S.W.3d at 420. "Reckless disregard" is a "high degree of awareness of probable falsity, for proof of which the plaintiff must present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989).

The actual malice standard requires that a defendant must subjectively possess significant doubt about the truth of his statements at the time they are made. *Bentley v. Bunton,* 94 S.W.3d 561, 596 (Tex.2002) (finding one of the defendants did not know or have reckless disregard he was communicating a falsehood); *see Turner v. KTRK TV., Inc.,* 38 S.W.3d 103, 120 (Tex.2000); *see also Cox Tex. Newspapers, L.P. v. Penick,* 219 S.W.3d 425 (Tex.App.-Austin 2007, pet. filed) (no evidence that appellants were or should have been aware that the omission would create a substantially false impression of the relevant events). Actual malice focuses on the defendant's state of mind "regarding the import of the statements actually made." *Bentley,* 94 S.W.3d at 603. "[A] defendant cannot be said to have made a statement with actual malice if he did not know or have reckless disregard for whether the statement communicated a falsehood." *Id.* Thus, the standard for what an article means, when determining whether there is evidence of actual malice, is purely subjective. The defendant must have subjectively known or had serious doubts that the article was communicating a falsehood.

Actual malice cannot be inferred from the falsity of the statement alone. *See Casso,* 776 S.W.2d at 558 (sufficiency of evidence to support finding of actual malice requires more than jury disbelieving defendant's testimony); *Martin v. Sw.*

*Elec. Power Co.,* 860 S.W.2d 197, 199–200 (Tex.App.-Texarkana 1993, writ denied). However, actual malice can be proven with circumstantial evidence. "The defendant's state of mind can—indeed, must usually—be proved by circumstantial evidence." *Bentley,* 94 S.W.3d at 596. Actual malice may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the words or acts of the defendant before, at, or after the time of the communication. *Procter & Gamble Mfg. Co. v. Hagler,* 880 S.W.2d 123, 126 (Tex.App.-Texarkana), *writ denied,* 884 S.W.2d 771 (Tex.1994).

The main dispute between the parties concerns whether the word "charged" is synonymous with "accused." The Herald Democrat argues that the words are equivalent and that any ambiguity in the article must be construed in its favor. Floyd argues that the word "charged" has a specific meaning utilized by the newspaper industry and has been assigned a specific meaning by the Herald Democrat itself. According to Floyd, the word "charged" refers to formal criminal charges. Because the word "charged" has a specific meaning, Floyd claims that actual malice can be inferred from the four corners of the article alone.

In her summary judgment affidavit, Graves claims that she used the word "charges" as a synonym for accusations. Graves stated she entertained "no doubts, let alone serious doubts, about the truth of any statement" in the November 4 article. McCorstin stated that he "believed the headline to be true" at the time it was published.

Texas courts have held that a defendant-movant may meet the burden of proof on summary judgment by means of an affidavit stating that the movant be-

lieved the communication to be true.[4] At the summary judgment stage, a libel defendant can negate actual malice as a matter of law by presenting evidence that he did not publish the statement with knowledge of its falsity or reckless disregard for its truth. *WFAA–TV v. McLemore*, 978 S.W.2d 568, 573–74 (Tex.1998); *Casso*, 776 S.W.2d at 559. Once the defendant has produced evidence negating actual malice as a matter of law, the burden shifts to the plaintiff to present controverting proof raising a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(c); *Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex.1999); *Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

Floyd argues that the affidavits are not conclusive because self-serving affidavits will negate malice as a matter of law only if they are "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 163 (Tex. 2004) (quoting *Casso*, 776 S.W.2d at 558); *see also Huckabee*, 19 S.W.3d at 424. According to Floyd, the affidavits cannot be readily controverted. The Texas Supreme Court, though, has disagreed. If a non-movant must come forth with independent evidence to prevail, summary judgment should not be denied merely because an affidavit cannot have been readily controverted. *Casso*, 776 S.W.2d at 558.

Floyd introduced some evidence to establish that the word "charged" means formal criminal charges. Floyd introduced 154 articles in which the Herald Democrat had used the word "charge." Of these 154 articles, approximately 133 reference "charge" in the criminal activity context.[5] According to Floyd, the context of the articles which do not reference formal criminal charges make clear that the articles are not referencing formal criminal charges. Floyd stated in his summary judgment affidavit that the term is commonly understood to mean formal criminal charges. Chief Bankston stated that "charged" to him means formal criminal charges in the form of a complaint, rather than merely allegations. Bankston stated that he would expect an experienced re-

4. *Johnson v. Sw. Newspapers Corp.*, 855 S.W.2d 182, 187 (Tex.App.-Amarillo 1993, writ denied); *see Casso*, 776 S.W.2d at 558. We note the Herald Democrat also argues that actual malice is negated as a matter of law when the reporter's interpretation of the published article is rational. The Herald Democrat claims actual malice is negated because Graves's interpretation that the article did not allege that formal criminal charges had been filed is rational. The "rational interpretation" test was created specifically for situations where the underlying facts are ambiguous. *See Time, Inc. v. Pape*, 401 U.S. 279, 285, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971) (distinguishing between a "direct account of events that speak for themselves" and an article which merely recounted what a commission reported); *see also Masson v. New Yorker Magazine*, 501 U.S. 496, 519, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (The "protection for rational interpretation serves First Amendment principles by allowing an author the interpretative license that is necessary when relying upon ambiguous sources."). The United States Supreme Court has indicated a reluctance to apply the rational interpretation test in other circumstances. *See Masson*, 501 U.S. at 520, 111 S.Ct. 2419. Graves admitted in her affidavit that Chief Bankston told her no "charges" had been filed. Because Graves was not relying on ambiguous sources, the "rational inference" test does not apply. The rational inference test is not the appropriate standard for analyzing the meaning of an article. When a publication is of ambiguous or doubtful import, the jury must determine its meaning. *Turner*, 38 S.W.3d at 114.

5. When used in the context of wrongdoing, Floyd alleges that the word "charged" was used ninety-nine percent of the time to refer to formal criminal charges. We have not independently verified the above calculation.

porter not to use the terminology contained in the article.

"A publisher's presentation of facts may be misleading, even negligently so, but is not a 'calculated falsehood' unless the publisher knows or strongly suspects that it is misleading." *Turner*, 38 S.W.3d at 120. All of the online articles were published after the article which forms the basis of the defamation suit. As such, the articles are no evidence that Graves subjectively knew the article communicated a falsehood *or had serious doubts as to whether the article communicated a falsehood.* Further, many of the articles were written by reporters for the Associated Press rather than reporters for the Herald Democrat. At best, the online articles merely establish an industry standard for the use of the word "charged." Further, the use of the word "charge" in other articles published after the publication of the edition about which Floyd complains might have been evidence of a later frame of mind of the editors of the Herald Democrat but would not be evidence of their frame of mind at the time of the publication about which Floyd complains. There is no evidence that Graves was aware of the industry standard for the use of the word "charged." Even if McCorstin's summary judgment affidavit can be interpreted as conceding that the word "charged" means formal criminal charges,[6] McCorstin's statement is no evidence that Graves knew at the time of publication that the word "charged" was likely to communicate that formal criminal charges had been filed. The record contains less than a scintilla of evidence that Graves knew or had reckless disregard she was communicating a falsehood. Even though the word "charged" as used in the story was not technically accurate, it is "the sort of inaccuracy that is commonplace in the forum of robust debate,"[7] which is not actionably libelous in nature.

■■■ The record contains no evidence that McCorstin acted with actual malice and less than a scintilla of evidence that Graves acted with actual malice. Actual malice cannot be inferred from the fact a publication is not substantially true as determined from the meaning a reasonable person would attribute to the article. Actual malice cannot be inferred from the falsity of the statement alone. *See Casso*, 776 S.W.2d at 558. Actual malice requires proof that the defendant subjectively knew or subjectively had serious doubts that the article was communicating a falsehood. Further, the possibility that a jury might disbelieve the defendant is not evidence of actual malice. *Freedom Newspapers v. Cantu*, 168 S.W.3d 847, 853 (Tex.2005). The conclusion that, based on the four corners of the articles alone, the articles were published with actual malice is noth-

---

6. Floyd argues that McCorstin admitted that "charged" means formal criminal charges. In the deposition of McCorstin, he testified as follows:

> Q. [Floyd's counsel] So, what you did when you came to writing a headline was read the whole story?
> A. [McCorstin] Probably—in this case, since it's a fairly short story, I might have read the whole story, but I would read like three four graphs [sic] of the story to get the gist of what I want to put in the headline.
> . . . .

> Q. [Floyd's counsel] And from that, you gleaned that a Bonham official had been charged on election eve with some kind of crime?
> A. [McCorstin] That's correct.

However, McCorstin also stated he used the word "charged" to convey that accusations had been made and did not intend to convey that formal charges had been filed by the police.

7. *Bose Corp. v. Consumers Union*, 466 U.S. 485, 513, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

ing more than mere speculation and surmise. Floyd has failed to present more than a scintilla of evidence to controvert the lack of actual malice. The trial court erred in denying the Herald Democrat's motion for summary judgment.

We reverse and render a take-nothing judgment in favor of the Herald Democrat.