Affirmed and Memorandum Opinion filed April 15, 2008








Affirmed and Memorandum Opinion filed April 15, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00043-CV

____________

 

URI COHEN, Appellant

 

V.

 

DELORES HAWKINS, Appellee

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 2004-36442

 



 

M E M O R A N D U M   O P I N I O N








Uri Cohen appeals the portions of a judgment that favor
Delores Hawkins.  Hawkins sued Cohen and Brian Culwell seeking, among other
things, return of her real property, which Culwell sold to Cohen.[1] 
Hawkins had signed a power of attorney authorizing Culwell to handle certain of
her affairs including real estate transactions.  Under color of this document,
Culwell sold Hawkins= property to Cohen in exchange for credit
on an antecedent debt Culwell owed to Cohen.  In his response to Hawkins= lawsuit, Cohen
raised claims for reimbursement of property taxes paid and indemnification
among other things.  After a bench trial, the trial court entered judgment
setting aside the conveyance deed from Culwell to Cohen and holding that the
power of attorney from Hawkins to Culwell was void.  The court further found
that Culwell committed fraud and breached his fiduciary duty to Hawkins.  The
court also denied all of Cohen=s requests for relief, finding that he did
not have clean hands in the underlying transaction.  The court awarded the
property to Hawkins and found Culwell liable for monetary damages.

On appeal, Cohen raises nine issues, contending: (1)
Culwell was vested as Hawkins= agent with authority to convey the
property and accept the proceeds; (2) the power of attorney was not rendered
invalid as to Cohen simply because it may have resulted from fraud between
Culwell and Hawkins; (3) Hawkins is estopped from denying the validity of the
power of attorney; (4) the conveyance deed, conveying the property to Cohen, is
not void; (5) the second corrected warranty deed, purporting to correct an
error in the conveyance from a prior owner to Hawkins, is not void; (6) Cohen
was a bona fide purchaser who took the property for value and without notice of
another=s claim of
interest in the property; (7) Cohen is entitled to reimbursement for taxes he
paid on the property; (8) Cohen is entitled to indemnification for costs he has
incurred in defending title; and (9) Hawkins= negligence was
more than 50% responsible for the damages incurred by all parties.  We affirm.

I.  Background








Hawkins testified that in late 2002, she was having trouble
buying a car because of her credit record.  Culwell offered to help, drafted a
document, and arranged for Hawkins to sign the document in front of a notary. 
The record contains a power of attorney apparently signed by Hawkins, granting
Culwell the power to:  Aact in [her] name, place and stead in any
way which [she herself] could do . . . with respect to the following matters .
. . Real estate transactions . . . Claims and litigation . . . Records, reports
and statements . . . [and granting authority] to delegate his powers to any
other person.@  The document also required Culwell to act in Hawkins= Abest interest.@  Sometime after
signing the document, Hawkins began receiving mail from the City of Houston
indicating that a piece of property she owned was now owned by Cohen.  She went
to see Culwell, who told her Athat=s no good,@ that he didn=t do it, and that
he would try to get her some money.  She told him that she didn=t want money, she
wanted her property back.  She testified that she knew nothing about the sale
of the property until she received  notice from the City.  Subsequently, Hawkins
and Culwell met again, and Culwell told Hawkins that someone wanted to give her
$27,000.  She said that was the last meeting she had with Culwell.  Thereafter,
a notice to vacate was stapled to the house located on the property.  Hawkins
was given the notice by Flora Binkley, the tenant who lived at the property. 
Hawkins denied that she ever gave Culwell written or oral authority to transfer
her property for his benefit.

Cohen testified that he is in the business of buying and
selling diamonds.  He met Culwell sometime around 2002 when Culwell began
buying diamonds from him.  Eventually, Culwell came to owe Cohen about $190,000
for diamonds Cohen had given him.  Cohen made repeated but unsuccessful
requests for payment.  Finally, Culwell offered Cohen several pieces of
property against the amount owed.  Apparently, two of the properties were in
Culwell=s name and the
third was owned by Hawkins.   Cohen said that he investigated the properties
and chose the one owned by Hawkins.  At the back of the property was what Cohen
described as a A[s]hack, little small building in the back
where the big building in front had been taken down.@  Cohen said that
Culwell told him that he (Culwell) owned the property.  Cohen further said that
he believed Culwell owned the property because of the power of attorney signed
by Hawkins.

In November, 2002, Culwell conveyed Hawkins= property to Cohen
in exchange for a $55,000 credit against the outstanding debt and an extension
of time to pay the remaining balance.  In an effort to clear title, Cohen=s attorney, Lana
Dieringer, obtained a Second Corrected Warranty Deed from George Raft
Washington, who had previously deeded the property to Hawkins.  Cohen listed
the property for sale approximately three months later.








In March 2004, Dieringer received a letter from an attorney
representing Hawkins and claiming that Hawkins= property had been
stolen.  Several months later, Cohen received a letter from the Harris County
District Attorney=s office informing him that Hawkins had
filed criminal charges against Culwell.  The district attorney=s office told
Cohen that the property should be removed from the market until the issue was
resolved.  Cohen complied with the district attorney=s request.

In her lawsuit against Culwell, Hawkins alleged fraudulent
inducement, fraudulent transfer, conversion, breach of fiduciary duty, fraud,
fraud in a real estate transaction, theft, and conspiracy to commit theft. 
Hawkins also alleged that Cohen conspired to commit theft and claimed that
Cohen was a joint tortfeasor in Culwell=s breach of
fiduciary duty, fraud, real estate fraud, and theft.  In response, Cohen filed
a general denial and raised claims against Hawkins for proportionate
responsibility, quasi-equitable estoppel, indemnification, conspiracy to
defraud, recovery of rents collected, and reimbursement for taxes paid.  Cohen
further alleged that he was a bona fide purchaser.

After a bench trial, the trial court entered 45 findings of
fact and 18 conclusions of law, giving multiple reasons for each of two core
holdings: (1) Hawkins was entitled to get her property back because it was
obtained by fraud, and (2) Cohen was not entitled to any requested relief
because he had unclean hands in the transaction.  Among the courts= specific findings
of fact are the following:

$        Hawkins came into possession of the property
on April 14, 1979.

$        Hawkins transferred the property to George
Raft Washington on August 21, 1989, and he transferred it to the George and
Dorothy Washington Family Partnership, Ltd. on August 23, 1995.

$        On January 11, 1996, the property was
transferred by warranty deed from George R. Washington to Hawkins.  A Corrected
Warranty Deed then issued on July 22, 1998, to correct the description of the
property transferred.








$        On October 18, 2007, a General Power of
Attorney was signed in the name of ADM Hawkins@ but not by Hawkins.  This power of attorney was presented to Cohen or
his attorney by Culwell and was subsequently produced by Cohen in discovery.

$        Hawkins executed a power of attorney on
November 8, 2002, authorizing Culwell to act for her in regard to real estate
transactions and other matters.  Hawkins signed based on Culwell=s false representation that he
would use it to clean up her credit.  The power of attorney did not
specifically authorize Culwell to use Hawkins= property for his own benefit.

$        On November 14, 2002, Culwell transferred
the property by deed to Cohen in exchange for a $55,000 credit against an
antecedent debt totaling $192,712.65.  Hawkins received no consideration for
the transfer.

$        Cohen knew that Culwell did not own the
property, Cohen did not visit or inspect the property, and he did not acquire
title insurance prior to the transfer.

$        Culwell had given Cohen over $17,000 in bad
checks prior to the property transfer.

$        Flora Binkley lived at the property from
February 2002 through the time of trial.

$        On September 9, 2003, George Raft Washington
executed a Second Corrected Warranty Deed to correct the name of the
transferor.  The draft deed was presented by Cohen=s attorney, Lana Dieringer, to
Washington=s attorney, Alice Bonner, without
Dieringer disclosing that she represented Cohen instead of Hawkins.  Hawkins
did not receive the corrected deed.

$        Lana Dieringer knew that the property never
belonged to Culwell.

$        Culwell had a fiduciary duty to Hawkins that
required him to place her interests above his own at any time when his
self-interest may conflict with his duty to her.

$        Cohen and agents acting on his behalf
participated in Culwell=s breach of his fiduciary duty.

$        Culwell committed fraud and statutory fraud
against Hawkins.  Culwell was also convicted in criminal court of stealing
Hawkins= property.

$        Cohen did not obtain legal title to the
property in good faith and did not rely on the power of attorney in good faith.

$        Cohen had actual and constructive notice of
Hawkins= interest in the property prior to
the transfer.








$        Cohen did not give consideration to
Washington for the Second Corrected Warranty Deed.

$        Cohen was not a bona fide purchaser.

$        Cohen paid all the taxes on the property
since the conveyance; however, he failed to establish that he had clean hands
and thus is not entitled to an equitable lien for such taxes.

$        Based on
Culwell=s actions, Hawkins
sustained $48,400 in damages, but Hawkins failed to establish that Cohen=s actions caused
her to sustain any damages.

In its conclusions of law, the court specifically held,
among other things:

$        Cohen failed to establish that he was a bona
fide purchaser.

$        The transfer of the property to Cohen was
invalid because (1) an agent cannot use a principal=s property to pay an antecedent
debt of the agent absent specific authority, (2) Cohen knew the consideration
paid was not for Hawkins= benefit, (3) Hawkins did not have
clear title because the Second Corrected Warranty Deed did not clear errors in
the title, (4) the deed transfers an impermissibly ambiguous Aundivided interest@ in the property, and (5) the power
of attorney was not filed in the county clerk=s office separately from the deed.

$        Culwell owed a fiduciary duty to Hawkins,
and Cohen knowingly participated in the violation of that duty.

$        The power of attorney is invalid because it
was procured by fraudulent misrepresentation.  However, the evidence does not
support a finding that Cohen conspired with Culwell to defraud Hawkins.

$        The Second Corrected Warranty Deed is
invalid because (1) Washington received no consideration for signing it, (2) it
was not delivered to Hawkins, (3) Washington did not intend to deliver it to
Cohen, and (4) it does not relate back to the prior warranty deed.

$        A
preponderance of the evidence does not support a finding that (1) Cohen is
entitled to indemnity from Hawkins, (2) Hawkins is equitably estopped from
denying the power of attorney, or (3) Cohen is entitled to an equitable lien
for the taxes he paid.








In its final judgment, the trial court set aside the deed
from Culwell to Cohen and held that the power of attorney signed by Hawkins was
invalid.  The court further ordered Culwell to pay Hawkins $48,400 in actual
damages, $100,000 in exemplary damages, and attorney=s fees.  Lastly,
the court ordered that Hawkins take nothing from Cohen and denied all
additional relief not expressly granted in the judgment.

II.  Bona Fide Purchaser

We begin by addressing Cohen=s sixth issue, in
which he contends that the trial court erred in holding (as a finding of fact
and as a conclusion of law) that he was not a bona fide purchaser of the
property.  Status as a bona fide purchaser is an affirmative defense to a title
dispute.  Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. 2001); Fletcher
v. Minton, 217 S.W.3d 755, 758 (Tex. App.CDallas 2007, no
pet.).  In an appeal following a bench trial, the trial court=s findings of fact
have the same weight as a jury verdict; we thus review the legal and factual
sufficiency of the evidence as we would following a verdict.  Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re K.R.P., 80 S.W.3d
669, 673 (Tex. App.CHouston [1st Dist.] 2002, pet. denied). 
If there is more than a scintilla of evidence supporting a finding of fact, we
will overrule a legal sufficiency challenge.  Formosa Plastics Corp. USA v.
Presidio Eng=rs & Contractors, Inc., 960 S.W.2d 41,
48 (Tex. 1998).  In reviewing a factual sufficiency challenge, we consider all
of the evidence and set aside a finding only if it is so against the great
weight and preponderance of the evidence as to be clearly wrong and unjust.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).  We review a trial court=s conclusions of
law de novo, independently evaluating them to determine their correctness.  In
re Moers, 104 S.W.3d 609, 611 (Tex. App.CHouston [1st
Dist.] 2003, no pet.).  We will uphold conclusions of law on appeal if they can
be sustained on any legal theory supported by the evidence.  Id.[2]








Generally, a person who acquires property in good faith,
for value, and without notice of any third‑party claim or interest is a
bona fide purchaser.  Madison, 39 S.W.3d at 606.  Cohen contends that he
acquired Hawkins= property in good faith, for value, and
without notice of any third‑party claim or interest.  The trial court
found that Cohen did not acquire the property in good faith, did not give
Hawkins consideration, and was on notice of a third-party claim or interest
(namely Hawkins= own interest).  We will focus our
analysis on the element of good faith because it is also implicated in other
issues raised by Cohen.

Texas law does not provide a definitive explanation for
what constitutes Agood faith@ sufficient to 
make one a bona fide purchaser.[3] 
Good faith can be defined generally as A[a] state of mind
consisting of (1) honesty in belief or purpose, (2) faithfulness to one=s duty or
obligation, (3) observance of reasonable commercial standards of fair dealing
in a given trade or business, or (4) absence of intent to defraud or to seek
unconscionable advantage.@  Black=s Law Dictionary
307 (2d pocket ed.).[4] 
Also instructive is the case of Associated Indem. Corp. v. CAT Contracting,
Inc., wherein the Texas Supreme Court sought to define Agood faith@ as used in a
surety agreement.  964 S.W.2d 276, 285 (Tex. 1998).  After reviewing
definitions for the phrase from various contexts, the court stated:  A[w]e hold that >good faith= in the surety
agreement before us refers to conduct which is honest in fact, free of improper
motive or wilful ignorance of the facts at hand.@  Id.  With
these general definitions in mind, we will review the trial court=s relevant factual
findings and legal conclusions.








In addition to its general findings that Cohen was not a
bona fide purchaser and did not acquire title to Hawkins= property in good
faith, the trial court made several more specific findings of fact relevant to
the good faith issue.  These include that Cohen:  (1) obtained the property
from Culwell knowing that Culwell did not own the property; (2) took the
property knowing that the transaction was benefitting Culwell and not Hawkins;
(3) did not act in good faith in relying on the power of attorney, which did
not authorize Culwell to sell Hawkins= property for his
own benefit; (4) failed to contact Hawkins to verify whether she authorized the
transfer of her property for Culwell=s benefit; (5)
relied on Culwell=s representations despite the fact Culwell
had given Cohen bad checks in the past; (6) knowingly participating in Culwell=s breach of his
fiduciary duty to Hawkins; (7) misled others in regard to the purpose of the
corrected warranty deed (representing essentially that it was for Hawkins); (8)
failed to obtain title insurance; and (9) had actual and constructive notice of
Hawkins= interest in the
property prior to the transfer.

In his brief, Cohen attacks the sufficiency of the evidence
on many of these findings; however, we need not address the evidence regarding
each and every finding in order to sustain the ultimate finding and conclusion
that Cohen did not act in good faith in obtaining the property.  We thus
address only the most relevant of Cohen=s arguments.  We
note in general that Cohen attacks the trial court=s findings as
being based on inferences and circumstantial evidence and as being contrary to
Cohen=s own testimony in
several regards.  However, since Agood faith@ is essentially a
mental state, it is not normally susceptible to direct proof and must usually
be proven by circumstantial evidence.  See generally Spoljaric v. Percival
Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986); DR Partners v. Floyd,
228 S.W.3d 493, 498 (Tex. App.CTexarkana 2007, no pet. h.).  Furthermore,
conflicts in the evidence are to be resolved by the fact finder, in this case
the trial court.  Zagorski v. Zagorski, 116 S.W.3d 309, 317 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).








First, we address Cohen=s contention that
the power of attorney authorized Culwell to use Hawkins= property for his
own benefit such that Cohen=s reliance on that document was reasonable
and in good faith.[5] 
Generally, a person with a fiduciary duty to another (such as an agent under a
power of attorney) may not use that position to benefit him or herself at the
others expense (i.e., Aself-dealing@).  See Tex.
Bank & Trust v. Moore, 595 S.W.2d 502, 507, 510 (Tex. 1980); Mims v.
Beall, 810 S.W.2d 876, 880 (Tex. App.CTexarkana 1991, no
writ).  In support of his argument that this particular power of attorney
authorized Culwell to benefit himself, Cohen relies primarily on the case of Neill
v. Kleiber, 112 S.W. 694 (Tex. Civ. App. 1908).  That case dealt with a
power of attorney in which the agent was given Afull power by this
to do with the said land as if the same was his own property.@  Id. at
695.  Based on this language, the court upheld the agent=s disbursement of
sale proceeds to himself.  Cohen contends that this broad language is
substantially similar to language in the power of attorney from Hawkins to
Culwell, authorizing Culwell to handle Hawkins= Areal estate
transactions . . . including powers to pledge, sell, or otherwise dispose of .
. . in my name, place and stead in any way which I myself could do.@  Specifically,
Cohen contends that the Ain any way which I myself could do@ phrase is the
functional equivalent of the Aas if the same was his own property@ language in Neill.








The key distinction between the two phrases is the
statement in the Neill document that the agent could treat the property
in question as his own property.  Such language (as in Neill) would
clearly inform a prospective purchaser that the agent could sell the principle=s property and
receive the benefit therefrom as though it were his own property.  The power of
attorney between Hawkins and Culwell, however, contains no such language.  It
appears to permit Culwell to sell property but does not indicate that Culwell
was authorized to benefit directly from the transaction.  Indeed, the document
specifically provides that Culwell is to act in Hawkins= Abest interests.@  Furthermore,
Cohen would have been aware that Culwell was applying the proceeds of the sale
to his own benefit because the Aproceeds of the sale@ reduced Culwell=s debt to Cohen
and permitted an extension of time to pay the remaining balance of the debt. 
The trial court, therefore, did not err in finding that the power of attorney
did not authorize Culwell to sell Hawkins= property for his
own benefit.

Next, we address Cohen=s argument that
there is no evidence to support the trial court=s finding that
Cohen knew the property did not belong to Culwell.  Cohen asserts that he
thought Culwell owned the property because of  the power of attorney.  However,
nothing in the power of attorney would support the conclusion that Culwell
owned the property.  Furthermore, as just discussed, the document did not
authorize Culwell to sell the property for his own benefit.  Additionally, the
deed Cohen received from Culwell lists Hawkins as grantor.  Lastly, Cohen
acknowledges that his attorney, Dieringer, knew that Culwell did not own the
property (as evidenced by her review of the power of attorney, her procurement
of a second corrected warranty deed from Washington, and her signature as
notary on the deed to Cohen).  It is well-settled that knowledge acquired by an
attorney during the existence of an attorney‑client relationship, and
while acting in the scope of his or her authority, is imputed to the client.  E.g.,
Burke v. Ins. Auto Auctions Corp., 169 S.W.3d 771, 777-78 (Tex. App.CDallas 2005, pet.
denied); McMahan v. Greenwood, 108 S.W.3d 467, 480-81 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied); Lehrer v. Zwernemann, 14 S.W.3d 775, 778
(Tex. App.CHouston [1st Dist.] 2000, pet. denied).  Thus, there
was sufficient evidence for the trial court to conclude, contrary to Cohen=s testimony, that
he knew Culwell did not own the property at the time of the conveyance.








Cohen additionally argues that evidence he knew the
property was owned by someone other than Culwell does not necessarily support
the claim that he acted in bad faith.  While taken alone, this evidence may not
demonstrate bad faith, it is an integral part of a chain of findings that the
trial court could have properly concluded amounted to bad faith.  The court
found that Cohen knew that (1) Culwell did not own the property that he
(Culwell) was attempting to convey, (2) Culwell did not have specific authority
to convey such property for his own benefit, and (3) knew the only benefit was
going to Culwell and not the true owner of the property.  Further, Cohen made
no attempt to find out whether Culwell indeed had such authority.  The evidence
supporting the first three findings is discussed above.  Regarding the failure
to make further inquiries, we need look no further than Cohen=s own testimony in
which he admitted not checking with Hawkins regarding Culwell=s authority or
further investigating ownership of the property before the conveyance.[6] 
Furthermore, Hawkins testified that she was not aware of the transfer until she
received notice from the city that the property belonged to Cohen.  In addition
to this chain of findings and evidence, there were additional findings and
evidence that Cohen wilfully disregarded the facts, acted without honesty in
belief or purpose, acted with improper motive, or sought an unconscionable
advantage, including that Cohen knew Culwell had previously passed bad checks
and had a criminal record and that Dieringer obtained the Second Corrected
Warranty Deed from Washington without revealing that she represented Cohen
instead of Hawkins.

Based on the foregoing, we hold that the record supports
the trial court=s findings of fact and conclusions of law
to the effect that Cohen did not act in good faith in obtaining Hawkins= property and thus
was not a bona fide purchaser.  Because of our holding in regard to the good
faith element of this defense, we need not address Cohen=s arguments
regarding the value and notice elements of the defense.  We overrule Cohen=s sixth issue.

 








III.  Remaining Issues

Next, we briefly discuss Cohen=s remaining
issues.  In his first issue, Cohen contends that the trial court erred in
holding that the power of attorney did not authorize Culwell to use Hawkins= property for his
own benefit.  Because we have held that the court did not in fact err in making
this finding, we overrule Cohen=s first issue.  In his second issue, Cohen
contends that the power of attorney was not void as to him because (1) even
assuming it was procured by fraud as found by the trial court, it was not
automatically void but only voidable at the election of the defrauded party
(Hawkins), and (2) the defrauded party cannot assert the fraud against a bona
fide purchaser, citing Pure Oil Co. v. Swindle, 58 S.W.2d 7 (Tex. Comm=n App. 1933,
holding approved), et al.  However because we held, in response to Cohen=s sixth issue,
that the trial court did not err in holding he was not a bona fide purchaser,
this issue is rendered moot and hence is overruled.

In his third issue, Cohen contends the trial court erred in
finding that Hawkins was not estopped from denying the validity of the power of
attorney.  Estoppel arises when, by the fault of one party, another has been
induced to change his position for the worse.  Vessels v. Anschutz Corp.,
823 S.W.2d 762, 765 (Tex. App.CTexarkana 1992, writ denied).  Estoppel
generally requires a showing of reasonable and detrimental reliance by the party
asserting the theory.  See id.  Cohen maintains that he reasonably
relied on Hawkins= statements in the power of attorney
authorizing Culwell to sell her property.  However, the fact that the power of
attorney did not authorize Culwell to sell Hawkins= property for his
own benefit coupled with the fact that Culwell was selling the property for his
own benefit was sufficient evidence for the trial court to determine that Cohen=s alleged reliance
was not, in fact, reasonable.  Accordingly, we overrule Cohen=s third issue.








In his fourth issue, Cohen contends the trial court erred
in concluding that the conveyance deed was invalid because it contained the
ambiguous phrase Aundivided interest@ and thus
impermissibly conveyed a real property interest that was indeterminable.  In
his fifth issue, Cohen contends the trial court erred in finding that the
second corrected warranty deed signed by Washington was invalid for various
reasons.  As discussed above, the trial court made several findings of fact and
conclusions of law, any one of which would have resulted in return of the
property to Hawkins.  Because we uphold return of the property to Hawkins
because of the fraud that was committed against her and the finding that Cohen
was not a bona fide purchaser, we need not address Cohen=s arguments
regarding validity of the deed that conveyed the property to him or the
validity of the corrected warranty deed.  Consequently, we overrule Cohen=s fourth and fifth
issues.

In his seventh issue, Cohen contends that the trial court
erred in declining to award him reimbursement for the taxes he paid on Hawkins= property. 
Generally, if a person in good faith and under a color of title, who claims to
be the owner of real estate, pays taxes assessed thereon, he or she is entitled
to reimbursement if the title is thereafter defeated.  Parker v. McGinnes,
842 S.W.2d 357, 363 (Tex. App.CHouston [1st Dist.] 1992, writ denied). 
The trial court denied reimbursement because it found appellant did not have
clean hands and did not act in good faith.  As explained above in the section
discussing Cohen=s alleged bona fide purchase, the trial
court did not err in finding that Cohen was not acting in good faith in
purchasing the property.  Consequently, we overrule Cohen=s seventh issue.

In his eighth issue, Cohen contends that the trial court
erred in refusing to impose an indemnity obligation on Hawkins.  Cohen bases
his argument on a clause contained in the power of attorney, which basically
states that Hawkins agreed to indemnify and hold harmless any third party who
acted in reliance on the provisions therein.  Cohen contends Hawkins should be
required to indemnify him for any losses he sustained in the present action
because he acted in reliance on the power of attorney.  Cohen, however,
premises his argument on the assertion that he acted in good faith.  As
explained above in the section discussing Cohen=s alleged bona
fide purchase, the trial court did not err in finding that Cohen did not act in
good faith.  Consequently, we overrule Cohen=s eighth issue.








In his ninth issue, Cohen challenges the trial court=s refusal to find
that appellant=s own  negligence was more than 50% responsible for
the damages she incurred in this case.  Cohen, however, did not adequately
brief this issue because he failed to cite any relevant authority.  See Tex. R.
App. P. 38.1(h).  Accordingly, we overrule Cohen=s ninth issue.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 15, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.









[1]  Although Culwell was a defendant in the case below,
he did not participate in the trial, and he is not a party to this appeal.





[2]  Cohen does not delineate which of his arguments
attack the legal sufficiency of the evidence as opposed to the factual
sufficiency of the evidence or the legal conclusions made by the trial court. 
We will consider all of Cohen=s arguments
while keeping in mind all of the appropriate standards of review.





[3]  AGood faith@ also does not have a formal legal definition in the
qualified immunity context.  See Thomas-Smith v. Mackin, 238 S.W.3d 503,
510-11 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  In Thomas-Smith,
we noted that because of the lack of a formal legal definition, the term should
be interpreted by the fact-finder based on its commonly understood meaning.  Id.
at 511.





[4]  The Uniform Commercial Code, which does not apply to
the conveyance of real property before us but is instructive nonetheless,
defines Agood faith@ as
Ahonesty in fact and the observance of reasonable
commercial standards of fair dealing.@ 
Tex. Bus. & Com. Code ' 1.201(19). 
Comments to a later section of the Code explain that the Ameaning of >fair
dealing= will depend upon the facts in the particular case.@  Id. ' 3.311, cmt. 4.  The U.C.C. thus recognizes that what constitutes good
faith will vary from situation to situation.





[5]  Cohen raised this argument both under this issue
(number six) and under his first issue, wherein he specifically argued that
Culwell was vested with authority to sell the property for his own benefit. 
Somewhat inconsistent with his appellate position, Cohen testified at trial
that based on the power of attorney, he believed that Hawkins= had given the property to Culwell.  He insisted,
however, that he relied on his attorney, Dieringer, in the matter and did not
fully understand the document.





[6]  A purchaser of land is charged with constructive
notice of all claims of a party in possession of the property that the
purchaser might have discovered had he made proper inquiry.  Apex Fin. Corp. v. Garza, 155 S.W.3d 230, 234 (Tex. App.CDallas 2004, pet. denied); see
also Madison, 39 S.W.3d at 606.  More specifically, possession by a third
party requires that the purchaser make such inquiries as a reasonable person
would, and the failure to make such inquiries charges the purchaser with
knowledge of the claims and facts such inquiry would have revealed.  See
Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, 460 (1904); Aldridge
v. N.E. I.S.D., 428 S.W.2d 447, 449 (Tex. Civ. App.CSan Antonio 1968, writ ref=d n.r.e.); Astin v. Martin,
289 S.W. 442, 444 (Tex. Civ. App.CAustin), rev=d on other grounds, 295 S.W. 584 (1926).  There was evidence upon which the trial court could
have properly concluded that Hawkins=
tenant on the property, Flora Binkley, was in open, visible, exclusive, and
unequivocal possession of the property conveyed to Cohen.  Binkley herself
testified in this regard, and there was evidence that a process server directed by Cohen=s attorney posted a notice to
vacate the premises on the building where Binkley lived.  Although there is
some evidence disputing whether the building was readably visible from the roadway
and whether it looked like an inhabited structure, resolution of conflicts in
the evidence is for the fact-finder.  See Zagorski, 116 S.W.3d at 317.